Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000872
29-SEP-2017
10:23 AM

NO. CAAP-14-0000872

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ELLEN KOHATSU AND KELVIN KOHATSU,
Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
NELSON FUKUHARA, Defendants-Appellees,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10,
DOE PARTNERSHIPS 1-10, DOE JOINT VENTURES 1-10, AND DOE
GOVERNMENTAL ENTITIES 1-10, INCLUSIVE, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 11-1-0088)

MEMORANDUM OPINION
(By: Nakamura, C.J., Fujise and Ginoza, JJ.)

Ellen Kohatsu (**Ellen**) and Kelvin Kohatsu (**Kelvin**) (collectively **the Kohatsus**) appeal from the "Judgment Regarding 1/8/14 Order: (1) Denying Plaintiffs' Amended Motion for Partial Summary Judgment on Coverage (Stacking Option) Filed November 22, 2013 and (2) Granting State Farm Mutual Automobile Insurance Co.'s Motion for Partial Summary Judgment Filed on September 17, 2013" (**Judgment**), filed on May 8, 2014, in the Circuit Court of the Third Circuit (**circuit court**),[1] entered pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 54(b).

---

[1] The Honorable Glenn S. Hara presided.

The Kohatsus contend that the circuit court erred in denying their amended partial summary judgment motion and in granting Defendant-Appellee State Farm Mutual Automobile Insurance Company's (**State Farm**) partial summary judgment motion. The Kohatsus assert the circuit court erred by concluding that: (1) the language of the Kohatsus' automobile insurance policy was not ambiguous; (2) State Farm's stacking option offer was sufficient pursuant to Macabio v. TIG Ins. Co., 87 Hawai'i 307, 955 P.2d 100 (1998); and (3) there was no genuine issue of material fact precluding summary judgment for State Farm. Additionally, the Kohatsus contend the circuit court should have concluded that the Kohatsus' automobile insurance policy provided that State Farm would pay any amount due when arbitration is invoked and an award is rendered.

For the reasons discussed below, we affirm.

I.    Background

The parties do not dispute the following facts.  Ellen was involved in an automobile accident in Hilo, Hawai'i, which resulted in a settlement of $300,000 from the other driver's insurance company for injuries Ellen incurred in the accident. The Kohatsus requested Underinsured Motorist (**UIM**) coverage benefits from their insurer, State Farm, for the remaining damages from the accident.  The parties disputed the extent of injuries resulting from the accident and whether UIM benefits were owing, and thus the parties entered arbitration to resolve the issue of the Kohatsus' damages.  In an Arbitration Award issued on December 10, 2010, a three-member arbitration panel awarded the Kohatsus a total of $2,304,652.12 in damages.

Following the Arbitration Award, the parties disputed the amount of insurance coverage that State Farm owed to the Kohatsus.  In 2011, the Kohatsus initiated this action in the circuit court against State Farm and Nelson Fukuhara (**Fukuhara**), who the Kohatsus allege was a State Farm agent who sold them the subject State Farm automobile policies.  The Kohatsus' First Amended Complaint asserts a number of claims against State Farm

and Fukuhara, and, *inter alia*, seeks a declaratory judgment that State Farm owes $400,000 of stacked UIM benefits under four separate policies, for a total of $1.6 million in stacked UIM benefits.

In the circuit court, the Kohatsus and State Farm filed cross motions for partial summary judgment addressing the extent of UIM coverage provided under the Kohatsus' State Farm insurance policy.  In their amended partial summary judgment motion, the Kohatsus argued that each policy for their four vehicles provided stacked UIM coverage of $400,000, and thus, the four policies together provided stacked UIM coverage totaling $1.6 million.  In the alternative, the Kohatsus argued that they should receive the entire amount of the arbitration award.  To the contrary, State Farm argued that each policy for the Kohatsus' four vehicles provided $100,000 in UIM coverage and thus the four policies together provided stacked UIM coverage totaling $400,000.

On January 8, 2014, the circuit court issued an order granting State Farm's partial summary judgment motion, which stated in pertinent part:

> 3.  The court finds that there are no genuine issues of fact.  The terms of the insurance policy in question are not ambiguous.  In construing the terms of the policy, the court finds that the language of the policy does not allow for a construction that would allow for stacking of the four policies in question, then stacking the policies again.
> 4.  In *Macabio v. TIG Insurance Co.*, 87 Hawai'i 307, 955 P.2d 100 (1998), there was no stacking of underinsured motorist ("UIM") coverage.  The issue was whether there was a sufficient offer of UIM coverage in accordance with the applicable statute.  In this case the [Kohatsus] opted for paid for and obtained stacked UIM coverage for four vehicles.  Thus the discussion in Macabio as to the cost of stacked UIM coverage being less than the comparable level of unstacked coverage does not apply to Plaintiffs [Kohatsus'] effort in this case to stack again the already stacked policies.

On May 8, 2014, the circuit court granted the Kohatsus' motion for certification under HRCP Rule 54(b), determining that there was no just reason for delaying entry of judgment on the UIM coverage issue.  Thus, on May 8, 2014, the circuit court entered Judgment pursuant to HRCP Rule 54(b) in favor of State

Farm and against the Kohatsus on the UIM coverage issue.  The Kohatsus timely appealed.

## II.  Discussion

### A.  Standards of Review

We review a grant or denial of summary judgment *de novo*.  Guajardo v. AIG Hawaiʻi Ins. Co., 118 Hawaiʻi 196, 201, 187 P.3d 580, 585 (2008) (citation omitted).  With regard to interpreting an insurance policy:

> [I]nsurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended. Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.
>
> Nevertheless, adherence to the plain language and literal meaning of insurance contract provisions is not without limitation. We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

Id. at 202, 187 P.3d at 586 (block formation altered and citation omitted).

> A contract is ambiguous when its terms are reasonably susceptible to more than one meaning. *Airgo v. Horizon Cargo Transp.*, 66 Haw. 590, 594, 670 P.2d 1277, 1280 (1983).  As a general rule, the court will look no further than the four corners of the contract to determine whether an ambiguity exists.  *State Farm Fire & Cas. Co. v. Pac. Rent-All*, 90 Hawaiʻi 315, 324, 978 P.2d 753, 762 (1999) (noting that the parties' disagreement as to the meaning of a contract does not render it ambiguous).  The parol evidence rule "precludes the use of extrinsic evidence to vary or contradict the terms of an unambiguous and integrated contract." *Pancakes of Hawaiʻi v. Pomare Props. Corp.*, 85 Hawaiʻi 300, 310, 944 P.2d 97, 107 (App.1997) (citation omitted).

Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawaiʻi 36, 45, 305 P.3d 452, 461 (2013).

### B.  Stacking UIM Coverage

The Kohatsus contend that their automobile policy is ambiguous because the "Limits of Liability" clause in the

4

document entitled "Your State Farm Car Policy" (**Policy**) does not contain an explanation of stacked benefits. The Kohatsus further argue that because State Farm issued separate policies for each vehicle insured, its offer of UIM coverage was ambiguous and reasonably susceptible to an interpretation in which the UIM coverage limit is stacked for four vehicles under <u>each</u> of the four policies, resulting in a total of $1.6 million in stacked UIM coverage in this case.

State Farm and the Kohatsus each attached the Policy to their respective partial motions for summary judgment. Section III of the Policy addresses UIM coverage and according to the Policy, "W4" coverage is UIM coverage with the stacking option. The Policy contains a "Limits of Liability" clause, which the Kohatsus contend is insufficient because it does not contain an explanation of the limits for benefits available under the stacking option. The "Limits of Liability" section provides in pertinent part:

**Limits of Liability - Coverage W4**

1.  <u>The amount of coverage is shown on the declarations page under "Limits of Liability - Coverage W4 - Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*.</u> "*Bodily injury* to one *person*" includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

(Emphasis added.)

The Kohatsus attached the Declarations Page for their Mercury Tracer, the car that Ellen occupied during the accident, which provides in pertinent part:

W4   Underinsured Motor Vehicle (Stacking Option)
     Limits of Liability-W4
     Each Person, Each Accident
     $100,000        $300,000

Thus, according to the Declarations Page for the Mercury Tracer, the Kohatsus purchased the stacking option for UIM coverage with limits of $100,000 per person and $300,000 per accident.

The Kohatsus also attached to their amended partial summary judgment motion the renewal policies for their other three vehicles insured by State Farm. The renewal documents provide that the stacked UIM coverage for each vehicle, like the Mercury Tracer, was $100,000 per person and $300,000 per accident.

Both the Kohatsus and State Farm attached a document to their respective motions for partial summary judgment entitled "Acknowledgment of Offer of Uninsured and Underinsured Motorist Coverage (Including Offer of Stacking Option) and Coverage Selection or Rejection" (**UIM Coverage and Stacking Offer**) for the Mercury Tracer.[2] The form states: "I acknowledge and agree that I have been offered Uninsured and Underinsured Motor Vehicle Coverages, as described on the reverse side of this form, with limits equal to my Bodily Injury Liability Coverage Limit." The UIM Coverage and Stacking Offer gave the Kohatsus the options to reject UIM coverage or select a lower limit of coverage than that of their Bodily Injury Liability Coverage, which they did not opt for. The UIM Coverage and Stacking Offer also gave the Kohatsus the "Stacking" option for the UIM coverage, which they chose. Kelvin signed at the bottom of the front page of the UIM Coverage and Stacking Offer. On the reverse side, UIM coverage is defined as

> a separate and distinct coverage which protects you, resident relatives and passengers in the insured vehicle when death or bodily injury is caused by a motorist who has inadequate insurance coverage. In other words, if you are injured in an automobile accident and the motorist at fault does not have enough Bodily Injury Liability Coverage to cover your injuries, your Underinsured Motor Vehicle coverage will take over and pay up to the limit selected, depending upon your injuries.

In addition, the UIM Coverage and Stacking Offer provides the following information about the option to stack UIM coverage:

---

[2] At oral argument, the parties confirmed that the UIM Coverage and Stacking Offer used for the Mercury Tracer is identical to the offer form used for the Kohatsus' other three cars.

**Two coverage options are available (Non-Stacking and Stacking).** A description of how these options work and examples are shown below. The same option (Non-Stacking or Stacking) must be selected on both Uninsured and Underinsured Motor Vehicle Coverages if you have both coverages.

. . . .

### NON-STACKING AND STACKING EXAMPLES

The two coverage options that are available determine your total limit for Uninsured and Underinsured Motor Vehicle Coverages.

**Non-Stacking Coverage** is the limits you carry on one vehicle. This option costs less than the Stacking option.

**Stacking Coverage** is the total of the limits you carry on all the vehicles you insure. If you add or delete vehicles, the total limits will change. This option costs more than the Non-Stacking option.

*Example*

You have *one vehicle insured*. The Uninsured/Underinsured Motor Vehicle Coverage limit is $50,000/$100,000 for each coverage. The total Uninsured/Underinsured Coverage available for one accident is:

| | Non-Stacking Per Person Per Accident | Stacking Per Person Per Accident |
|---|---|---|
| Total Coverage Available | $50,000/$100,000 (Limit on One Vehicle) | $50,000/$100,000 (Add Limits Together) |

You have *two vehicles insured*. The Uninsured/Underinsured Motor Vehicle Coverage limit is $50,000/$100,000 for each coverage. The total Uninsured/Underinsured Coverage available for one accident is:

| | Non-Stacking Per Person Per Accident | Stacking Per Person Per Accident |
|---|---|---|
| Total Coverage Available | $50,000/$100,000 (Limit on One Vehicle) | $100,000/$200,000 (Add Limits Together) |

In this case, the parties agree that the Kohatsus insured four vehicles under four separate policies, and that they elected the UIM stacking option for each offer of UIM coverage. According to the Declarations Page for the Mercury Tracer and the renewal documents for each of the three other cars, the Kohatsus' UIM coverage was $100,000 per person and $300,000 per accident for each of their vehicles. According to the UIM Coverage and Stacking Offer: "Stacking Coverage is the total of the limits you

carry on all the vehicles you insure. If you add or delete vehicles, the total limits will change." (Emphasis added.) Further, with regard to non-stacking and stacking, the offer form stated that "[a] description of how these options work and examples are shown below." Important to our analysis is the example for when "[y]ou have **two vehicles insured**." Given the established facts in this record, this example involves two vehicles insured under two separate policies. In the example, where the UIM limit is $50,000/$100,000, the stacking option only results in doubled limits, i.e. $100,000/$200,000 of stacked UIM benefits. In other words, in accordance with the explanation in the offer that "Stacking Coverage is the total of the limits you carry on all the vehicles you insure[,]" the UIM limit is multiplied by two (the number of vehicles insured), rather than multiplying the UIM limit four times (twice for one policy and then twice for the other policy).[3]

Based on a plain reading of the UIM Coverage and Stacking Offer, including the specific example provided therein as to how stacking works, we conclude that the Kohatsus' stacked UIM coverage was the total of the UIM limits that they carried on the four vehicles they insured. Thus, the per person UIM coverage limit of $100,000 multiplied by four vehicles results in a total of $400,000 of stacked UIM coverage for the claim at issue.

C.    **Macabio v. TIG Insurance Co.**

The Kohatsus contend that based on how State Farm defines stacking -- to result in $400,000 rather than $1.6 million in stacked UIM coverage here -- the UIM Coverage and Stacking Offer is misleading when it states that stacking costs more and non-stacking costs less. The Kohatsus contend that

---

[3] The Kohatsus assert that their reading of the policy is reasonable because it is possible that an insured who has multiple vehicles may choose to stack UIM benefits only for some vehicles, but not all. We recognize the potential issue that may arise in such a circumstance, but note that we are not addressing such a circumstance in this case.

"[i]n fact, if four policies and their premiums are added together as urged by State Farm, stacking costs less, not more, and non-stacking costs more, not less." The Kohatsus cite to Macabio v. TIG Ins. Co., 87 Hawai'i 307, 955 P.2d 100 (1998) to support their contention that the UIM Coverage and Stacking Offer is misleading, and that given the misleading statement that stacking cost more, "it was reasonable for [the Kohatsus] to believe that benefits were also more for that policy, i.e. $400,000 per policy."

In Macabio, the Supreme Court of Hawai'i utilized a four prong test previously set forth in Mollena v. Fireman's Fund Ins. Co. of Hawaii, Inc., 72 Haw. 314, 816 P.2d 968 (1991), "to determine the legal sufficiency of an offer of insurance coverage" and concluded that the offer in Macabio was legally insufficient. Macabio, 87 Hawai'i at 314, 955 P.2d at 107. The third prong of the test from Mollena is "the insurer must intelligibly advise the insured of the nature of the optional coverage[.]" Id. (citation omitted). The supreme court stated that the letter sent to the Macabios from their insurance carrier

> contains a provision explaining the nature of stacking by comparing the [Uninsured Motorist (UM)] and UIM benefits of a stacked policy with that of a non-stacked policy. The example utilizes a two-car policy, each car with a $75,000.00 limit of UIM coverage and a $75,000.00 limit of UM coverage. From this example, it is clear that the stacked policy would result in the insured being able to claim benefits of $150,000.00, while the unstacked policy would result in benefits of only $75,000.00.

Id. at 315, 955 P.2d at 108. The supreme court concluded:

> Without further explanation, the average insured is not likely to realize that he or she could purchase the same amount of coverage under a stacked, two-car policy with coverage of $25,000.00 on each vehicle, as an unstacked, two-car policy with coverage of $50,000.00 on each vehicle, but for a lower premium. For example, according to the chart provided by TIG in its coverage selection form, an unstacked two-car policy of UIM benefits, with a limit of $50,000.00 per vehicle, would result in a semi-annual premium of $26.00 (2 cars x $13.00). However, the same policy, with stacked UIM benefits of $25,000.00 per vehicle would result in a semi-annual premium of $24.00 (2 cars x $12.00). This

> results in a semi-annual savings of $2.00, or an annual savings of $4.00.

> In this case, TIG sold the Macabios unstacked UIM coverage with a limit of $100,000.00 per vehicle, at $19.00 per car semi-annually. The Macabios had four cars and therefore paid $76.00 (4 cars x $19.00). Because the coverage was unstacked, the Macabios were protected to a maximum of $100,000.00. The premium, however, for $25,000.00 of stacked coverage was $12.00 per car for a total of $48.00 for four cars. This would result in coverage equivalent to $100,000.00 of unstacked coverage, but would have cost only $48.00 semi-annually—a savings of $28.00 ($76.00—$48.00). Therefore, the Macabios could have obtained the same amount of coverage at a lower premium by selecting the stacking option.

> Thus, the examples given in the offer clearly do not convey the true "nature" of stacked coverage. Without more, an insured with multiple vehicles is not likely to determine that the same amount of coverage in an unstacked policy could be purchased for a lower premium by selecting the stacking option. Accordingly, the offer fails to satisfy the third prong of the *Mollena* test.

Id. at 315-16, 955 P.3d at 108-09.

This case is distinguishable from Macabio.  The Macabios purchased non-stacked coverage, however, they could have stacked their coverage to reach the same $100,000 limit per vehicle at a cheaper rate.  By contrast, the Kohatsus in fact purchased stacked coverage, stacking each of their $100,000 UIM limits.

Moreover, the Kohatsus' argument about whether stacking actually cost more in various scenarios does not impact the issue before us.  Attached to their amended partial summary judgment motion, the Kohatsus provided a document entitled "Required and Optional Additional Coverage."  The UIM coverage provided the following options:

| Underinsured Motor Vehicle Coverage (per person/per accident) Non-Stacking and Stacking | Non-Stacking Premium | Stacking Premium |
|---|---|---|
| $ 20,000/40,000 (basic) | $ 12.80 | $ 20.40 |
| $ 25,000/50,000 | $ 15.00 | $ 24.00 |
| $ 35,000/100,000 | $ 20.80 | $ 34.20 |
| $ 50,000/100,000 | $ 24.00 | $ 40.40 |
| $ 100,000/300,000 | $ 45.00 | $ 74.20 |

With regard to the Kohatsus, State Farms' statement that stacked

UIM coverage costs more was correct, because the Kohatsus could not have purchased a cheaper plan and received the desired limits, regardless of whether the stacked policies here are interpreted to provide $400,000 or $1.6 million of UIM coverage. Thus, in this case, State Farms' statements in the UIM Coverage and Stacking Offer that stacked coverage "costs more than the Non-Stacking option" and non-stacked coverage "costs less than the Stacking option" were not misleading as applied to the Kohatsus. See Ranger v. State Farm Ins. Co., 333 F. Supp.2d 935, 939-40 (D. Haw. 2004). The subject statements also appear to have no impact on the amount of stacked UIM coverage the Kohatsus would reasonably expect in this case.

Therefore, Macabio does not support the Kohatsus' contention that the stacking offer was misleading and further does not support an interpretation that the Kohatsus are entitled to $1.6 million in stacked UIM coverage.

D.    No Genuine Issues of Material Fact

The Kohatsus contend that the circuit court erred in granting State Farm's partial summary judgment motion because there were genuine issues of material fact. The Kohatsus contend Kelvin submitted a declaration setting forth representations made by their State Farm agent, Fukuhara, concerning the extent of benefits available under the policy and "State Farm submitted no counter declarations." Thus, the Kohatsus argue that a genuine issue of material fact "existed to preclude summary judgment because the circuit court could not resolve the merits of [Kelvin's] declaration by way of summary judgment."

Kelvin's declaration states in pertinent part that:

I was not familiar with and did not know what stacking was so I asked my agent what we would get for the additional premium charged for the stacking option. I was told that the new policy limit would be increased to $100,000 multiplied by the number of cars I had.

(Emphasis added.) Kelvin then further asserts that his

11

understanding of his agent's statement was that there would be UIM coverage of $400,000 for each policy, resulting in $1.6 million for all four policies.

"[A] court must respect the plain terms of the policy and not create ambiguity where none exists." Hart v. Ticor Title Ins. Co., 126 Hawai'i 448, 456, 272 P.3d 1215, 1223 (2012) (citation omitted). Further, "[i]t is well settled that courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous." State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999). "The court should look no further than the four corners of the document to determine whether an ambiguity exists. Consequently, the parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous." Id. (citations omitted).

In this case, the explanation of UIM stacking in the UIM Coverage and Stacking Offer is not ambiguous. We decline to rely on evidence extrinsic to the four corners of the UIM Coverage and Stacking Offer to vary or contradict its terms. See Hawaiian Ass'n of Seventh-Day Adventists, 130 Hawai'i at 45, 305 P.3d at 461. Therefore, the circuit court did not err when it determined there were no genuine issues of material fact.

E.    Arbitration Award

The Kohatsus contend, in the alternative, that the plain language of the arbitration provision in the Policy "provides that the amount of benefits awarded in arbitration is binding and that State Farm will pay any amount due."

With regard to deciding fault and amount under the W4 coverage carried by the Kohatsus, the Policy states in pertinent part:

> **Deciding Fault and Amount — Coverages U, U4, W and W4**
>
> Two questions must be decided by agreement between the *insured* and us:

1.     Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle* or *underinsured motor vehicle*; and

2.     If so, in what amount?

If there is no agreement, these questions shall be decided by arbitration upon written request of the *insured* or us.

The next provision in the Policy states:

**Payment of Any Amount Due - Coverages U, U4, W and W4**

We will pay any amount due:

1.     to the *insured*;

2.     to a parent or guardian if the *insured* is minor or an incompetent *person*;

3.     to the surviving *spouse*; or

4.     at our option, to a *person* authorized by law to receive such payment.

The Kohatsus rely on the above two provisions to assert that State Farm was required to pay the entire amount of the arbitration award. However, the provision entitled "Limits of Liability - Coverage W4" sets forth a limit on the amount of UIM benefits that State Farm will pay:

2.     The most we pay will be the lesser of:

a.     the difference between the amount of the *insured's* damages for *bodily injury* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*; or

b.     the limits of liability of this coverage.

(Emphasis added.) In reading the provisions of the Policy together, the Limits of Liability section reflects that the payment of "any amount due" will at most amount to "the limits of liability of this coverage." Based on our discussion above, the Kohatsus' stacked UIM coverage amounted to $400,000 per person.

Therefore, the Kohatsus' policy does not provide that State Farm was required to pay the entire amount of damages awarded in the Arbitration Award.

13

## III. Conclusion

For the reasons set forth above, the "Judgment Regarding 1/8/14 Order: (1) Denying Plaintiffs' Amended Motion for Partial Summary Judgment on Coverage (Stacking Option) Filed November 22, 2013 and (2) Granting State Farm Mutual Automobile Insurance Co.'s Motion for Partial Summary Judgment Filed on September 17, 2013," filed on May 8, 2014, in the Circuit Court of the Third Circuit, is affirmed.

DATED:  Honolulu, Hawai'i, September 29, 2017.

On the briefs:

David L. Fairbanks,
Bert S. Sakuda,
Patrick F. McTernan,
Brian T. Toma,
for Plaintiffs-Appellants.

Richard B. Miller,
David R. Harada-Stone,

for Defendants-Appellees.

*Craig H. Nakamura*
Chief Judge

*[signature]*
Associate Judge

*[signature]*
Associate Judge

14